Judge Higginson, and may it please the court, Noel Francisco for United Airlines. Your Honor, this case is dominated by individual questions related to religious sincerity, reasonableness of accommodations, undue hardship, and damages, each of which defeats the class certification here. Consider just two simple hypotheticals. Pilot Jones is a long-time adherent to a religion that opposes all vaccines, applied for alternative jobs but none were available, and flies out of United's hub in Newark, New Jersey where there are lots of reserve crews available. Pilot Smith, in contrast, joined an online religion after United announced its policy, turned down an alternative, higher-paying job at his home base, and flies out of a small airport with very few reserve crews. A jury could obviously find in favor of one but against the other. These are real-life ones taken from the class certification discovery, or these are hypothetical? I think they're hypothetical. There are facts drawn from the record, but it shows that a jury could obviously find different ways for each one, and could certainly find different damages. If the standard review is abuse of discretion, the district court did seem to say, well, there's a huge amount of commonality, right? Same leave policy, same injury, but then specifically as to pre-accommodation commonality, each one risked arguably death, risked losing their job, so the focus seemed to be, I see a lot that's in common. Well, Your Honor, I think there are a couple of different responses to that. The first focuses on commonality, and the second focuses on predominance. On commonality, now, they have deferred, and they put forward several issues that they asserted were common, including sincerity, reasonableness of accommodation, and undue hardship, and in our view, none of them are common, but I'll put that to the side. The district court's predominance ruling was based on its conclusion that all of these issues, as well as damages, were common issues. Well, I don't think any of them are, but even one of them is. That means his predominance analysis was fundamentally flawed because he didn't do the proper balancing, so at a minimum, you need to remand for the predominance. In the briefing, you've stressed the sincerity question as the one where there almost couldn't be commonality. I guess at a broad level, I'd ask you what motive would any of them have had to lie if they're basically giving everything up for it? Well, sure, Your Honor, and I think it's because it boils down to when you have particular conduct that can be both religiously motivated and non-religiously motivated. Right, I guess, but weeding all the cases to Gore, our cases, and then Supreme Court level, Holt, Hobby Lobby, it's more a distinction between we leave faith alone, right? Plausibility of faith. All we're looking at is are they credible in their assertion of it? So have I oversimplified it to say this is either a lie that you have that belief, but that's about all the inquiry can be. So to tie it up as a question, does that really allow you to ask the questions that I see could be there, which is, oh, it's political, or you're fearful of it not being safe? It 100% does, Your Honor, because it boils down to a credibility determination. Think, for example, of prisoners who claim that they have a religious belief that they need to eat steak and drink red wine every night at dinner. Now, because there's an obvious non-religious motivation for that, a defendant would obviously have the right to test whether that was a credible assertion. And I think with all due respect, it's similar for COVID, because there are both religious and non-religious reasons to object to it. I'm actually a pretty good example of that. I'm a fairly religious person. I very much oppose COVID vaccine mandates, but I could not credibly assert a religious objection to it, because while I have many reasons why I oppose it, my Catholic faith isn't one of them. Now, United has a due process right to try to figure out whether any of these particular plaintiffs is more like me, or more like the Christian scientist who's never... Okay, but even that, your hypothetical, yourself, if you'd said, I'm Catholic, and I can't take a vaccination, that may be false, according to church doctrine, if the Pope has said that. But would that be permissible to inquire into, whether or not that belief has the tenant you personally think it does? No, but it would be valid to question whether or not I actually believe what I was saying. Not whether it's true as a matter of religious doctrine, but whether I truly believe it. Again, the case of the prisoner... Your HR department did do a first shot. We know that the people who are in this class all had been given the accommodation. Maybe they were more generous than Title VII allows, but is that the only answer? In other words, doesn't that put them all in the same box to begin with? Not in the slightest, Your Honor, because we granted accommodations regardless of whether they met the strictures of Title VII or the ADA. That's at page 7155 of the record, where our affidavit is here. We weren't examining sincerity. Think, for example, of the hundreds of employees who joined an online religion, flipped a few boxes, got a computer-generated letter saying that this was their religious belief and submitted that. But they did deny some, though. Are you saying that the ones that were denied were the ones that were done automatically online? Those weren't denied, Your Honor. But I also want to emphasize... But some were at some point, correct? Some were, some weren't. I don't think those ones were denied for that particular reason. Okay. Well, my question generally is that some were denied for whatever reason, so there was an evaluation process. Why can there not... I mean, typically with class certifications, at some point the district judge with counsel has to fashion some mechanism that sets forth criteria for joining the class. We don't let people just show up and say, I want to be in this class. I work for United. There is some way that you qualify for class membership. Why could that not be done at that juncture? Well, this class was defined as everybody who was granted a religious accommodation, so it doesn't actually do that in terms of the class definition. And I pointed to what Judge Wilkinson said in Myers against Hoves, where he made clear that just because religious accommodations or accommodations generally were granted as a matter of good faith doesn't mean that the plaintiffs are legally entitled. Well, I'm talking about post... At some point in the litigation in the future, this district court with counsel is going to have to define how to become a class member. And that's what I'm suggesting might be the juncture where sincerity, if you want to test that, if you have reason to test it, of certain class members can be done. Before you answer that, I guess my greater concern is, are we arguing that... If we agree with you, are we agreeing with the argument that religious discrimination can never be a rule, can never be a class-certified action? That is definitely not our position. If, for example, you say we're going to give Christians an exemption but not Muslims an exemption, that's a religious discrimination claim where you're treating one of them worse than another because of your religion. That's not this case. Here, religious people categorically were treated better than non-religious people. If you were not religious, you had two options, take the shot or get fired. If you were religious, you had two additional options. You could also take unpaid leave, come back when it was over, or apply for an alternative job. That's a classic accommodation claim where you do have to establish both your sincerity and it's subject to the reasonableness defense. And that's why I want to emphasize that while sincerity is a major individual issue here, as this court made crystal clear in the Bravery decision, when it reversed class certification because of the sincerity issue, it's not the only individualized issue here. You also have the reasonableness of the accommodation and you also have damages. In Allison, this court made quite clear that you can't certify a B3 damages class under Title VII precisely because of the individualized nature of the damages issue. And that's why no court in the Fifth Circuit has ever since certified a B3 damages class under Title VII because of those inherently individualized issues. It turns on things like mental anguish, emotional distress, what kind of financial harm did you suffer as a result of these supposedly adverse actions. And that's financial harm pulling apart from back pay. Now, my friends focus on the back pay issue. They claim to have come up with an easy way to solve the back pay problem. And I would submit that they're fundamentally wrong. This is not an industry where employees simply draw a salary and you can look at what they made last year and project it forward onto what they're going to make next year. Instead, pay varies wildly from month to month and year to year because it's ultimately driven by the preferences of pilots and flight attendants when they're bidding on their schedule. That's why our unrebutted expert made clear that their approach would get it wrong 85 percent of the time. That means they run straight into a Comcast problem because they don't have a valid class-wide way of establishing damages. But I'm even willing to put the Comcast problem aside and assume for the sake of argument that they think they can do what they say they can do, which is to go employee by employee through this thousand-plus employees, figure out what they made last year, map that onto what their preferences are to project what they might make next year, and come up with some kind of a formula. Most of them were reemployed pretty quickly. Sure, Your Honor. That limits the damages. It doesn't limit the nature of the inquiry. But you would know it would be easy to figure out each individual's amount of time out, the unpaid portion of time. Your Honor, you can look at what they made last year. I'm going to switch you back to sincerity. I appreciate that. But factually, once you had all the class discovered, could you describe roughly how many you think do implicate individualized false claims? Your Honor, what I can tell you is that there were 180 employees who joined this online religion where they just clicked a few boxes and it spat out a computer-generated attestation letter. They never attended a ceremony or never actually met a person.  That's helpful. Thank you. Two legal questions, because you brought up Braidwood in passing, and I'll bring it up with opposing counsel. Are we controlled by that case? And specifically, maybe just tell me, what do you think about the district court's efforts to distinguish it in footnote 3? I think you are controlled in that case, and I think that those efforts to distinguish it are just fundamentally wrong. Braidwood acknowledged that sincerity is a very low bar, but it nonetheless recognized it was an individual credibility determination that on its own defeated class certification. All Braidwood is is an application of the various summary judgment cases and individual cases that this court has addressed, where it's often reversed the summary judgment on the sincerity issue and sent it back for a jury trial. Now, what the district court said was that, well, these involve companies, not individuals. With all due respect, I think that cuts the other way. It's a lot easier to figure out whether a company has a sincere religious belief than an individual, because you're typically looking at a projective addition, like articles of incorporation or bylaws. With individuals, it really does boil down to credibility. And it's impossible for me to understand how you can determine the credibility of 1,000 plus people in one fell swoop, where either everyone is credible or everyone is not credible. It's interesting that most of the law cited by our circuit, Tagore, I was on, in almost every case, admittedly, there's searching analysis of the individuality. But we almost always say we're going to credit the sincerity. No, Your Honor. I think that in the individual cases, what you have in Davis and Tagore and in the more recent Wright case is where summary judgment is granted on sincerity. It comes up to this court. This court says, no, it's a disputed issue of fact, because it's an individual. I thought that in Tagore, the district court said, not sincere. We said, oh, look, he has the curb on 24 hours a day. The only time he ever doesn't have it is on a plane. Therefore, we sent it back opposite. And you sent it back for a jury trial. Yes. You sent it back for a jury trial, precisely because it ultimately boiled down to individual credibility. We talked about sincerity. We've talked about that. One more on sincerity. Have you argued at all that there's a problem of edging into a fail-safe class here? Is that part of your argument? Your Honor, my understanding is that their only fail-safe argument is with respect to the ADA class. No, but I guess I'm wondering whether you think the district court's class certification here presumes an issue that they would otherwise have to prove. Oh, he certainly does that. I guess I wasn't necessarily understanding that as a fail-safe issue. I think he created effectively an irrebuttable presumption that if you assert a religious objection, if you come up with some third-party attestation for it, including a computer-generated one, and if you were willing to take an unpaid leave, that's an irrebuttable presumption of sincerity. And that flies in the face of the fact that under Title VII, it's their burden of proof. It might be a low standard, but it's still their burden of proof. You also have the individualizations relating to the reasonableness of the accommodation. Here, it wasn't just an unpaid leave. Every pilot and flight attendant had the opportunity to apply for an alternative position. They were given preferential treatment, if even minimally qualified. Mr. Sombrano, for example, was offered a higher-paying management position and turned it down. Ms. Kincannon could have applied for four ramp-agent positions that would have given her higher average monthly pay, but didn't even apply. If either of them had filed individual lawsuits against us, we would absolutely have the due process right to raise these defenses. And what the Supreme Court squarely held in the Walmart case is that you cannot certify a class on the assumption that you don't have the right to raise these individualized defenses. So while we have focused a lot on sincerity, it's not the only individualized question. You've got damages, the reasonableness of the accommodation, and frankly, I think you could overturn the district court just on those two issues. I think the sincerity issue just makes the rubble bounce because it makes clear that at every single term, this case is dominated by individualized questions. Now, my friends focus on the fact that they claim that we have this uniform policy. Two responses to that. One, I don't think we do because every employee did have the opportunity to apply for an alternative position. But secondly, even if we did, it wouldn't matter. If we have a uniform policy and you don't have a sincere religious objection to it, it hasn't violated your rights. If we have a uniform policy and that uniform policy offers you a higher-paying alternative job and you turn it down, it didn't violate your rights. Same with undue hardship, same with damages. These are all individualized questions regardless of whether our policy is uniform or not. Excellent. You've saved time for rebuttal. Believe it or not, the red light came on. Thank you. Thank you very much. Mr. Scherr. Good afternoon, Your Honors. Gene Scherr on behalf of the appellees' cross appellants, including Mr. Sobrano, who is another similarly situated United employee. The class action device is designed in large part to promote accountability for large-scale wrongdoing. In this case, a company-wide unpaid leave policy that was intentionally designed to coerce thousands of employees into acting contrary to their sincere religious beliefs and health concerns, and a policy that this court has already concluded imposed irreparable injury on members of the class. And my friend, for all his considerable oratorical talents, has failed to establish any abusive discretion in that portion of the district court's decision certifying the unpaid leave class. But it is sort of just hard to understand how religious sincerity could ever be decided in one class stroke. And there isn't any precedent that I see suggesting that. Do you have precedent for resolving this issue either in the prison circumstance or employment discrimination? Two points in response, Your Honor. First of all, it's important to remember the standard of review. It is abuse. This court articulated an angle, which is that it's only abuse of discretion if no reasonable person could conclude that class certification was acceptable. And then more directly to your point, United's entire argument on sincerity depends on a misreading and over-reading of the district court's decision. The district court did not say that it was determining sincerity as a matter of law. It simply said there are a lot of common facts that bear on sincerity. And based on those common facts, a question can be put to a fact finder as to whether those common facts create a prima facie case of sincerity. But going back to the question about novelty and lack of precedent, can you point to a single case in this circuit or anywhere where a court has certified a class action premised on claims of religious discrimination? No, but this is a highly unusual situation. Right, but I guess then you'll hear the critical case I'm worried about is don't we have binding precedent that goes the other way? Why for corporate persons would we have to decertify class because sincerity of a corporation is too individual? But now for natural persons, and isn't the opposing counsel right, at least as the footnote points out, for corporations we can look at pretty much nine categories in addition. But for individual natural, we're suddenly going to say we can't do that? Well, I think the district court's distinction of Breitbart was reasonable, but there are several additional important distinctions. One of which is that the court's holding there was that it's generally inappropriate to certify classes where the definition itself depends on the member's state of mind. That's the way the class, the proposed class was certified there. Yeah, but here the class definition includes, quote, all employees united deemed customer facing who receive an accommodation due to sincerely held religious belief. All employees, so the certification is sort of answering the question. We're certifying people who united deemed, but united wants to contest that. Well, and in determining who's in the class, there may be an inquiry about that. You mean they get another bite later? They may get another bite later. And I think the district court's framing of that common issue allows that. It's just sufficient to establish- Isn't there some friction, though, with it saying can't do it with physical disability? Because that's too individualized. But mental state would seem to be just as individualized to me. If I'm going to mislead or lie about my mental state, it's about equivalent to misleading or lying if I've got an ACL tear. But under this court's precedent, the light touch precedent and all of that- Light touch. But light touch doesn't mean no touch. You can fairly infer a mental state from actions and words, right? But that's from that Musa- I can't pronounce it.  What's that? Musa Sada?  But it took our court 12 paragraphs to confirm that the diet was actually the Jewish faith required. And by the way, the court did that as a matter of law, right? Based on those facts. 12, yeah. It's a decision made as a matter of law, which is not what we have here. We don't have a finding of sincerity as a matter of law by the district court, but also- So if 1,000 people join this class, give or take, would United be able, entitled, to probe each of those 1,000 people's sincerity individually? Well, the district court made a judgment that that's very unlikely to happen, right? Once a prima facie case of sincerity has been established- And by the way, United could propose counter questions to the fact finder, right? For example, if somebody went out and joined an online church, does that defeat sincerity? And so once you've gone through that process using the common evidence and asking generic questions, you're going to dramatically reduce the range of disagreeing about who was sincere and who was not sincere. I was trying to look through all the discovery hearings about the class certification, and there were interrogatories that were asking each individual, have you always been vaccinated? Did you ever refuse? I think Sombrano himself had been vaccinated since age 18. Doesn't that immediately create a lot of grist? Those inconsistencies don't go to the plausibility of the faith. It goes, hey, they've suddenly decided they won't take a vaccine that they took last year. Well, those are the kinds of questions that United would be able to pose on a generic basis, right? Using the common evidence, does that- If somebody was vaccinated, does that defeat sincerity? And let me back up. There's another reason why this is not likely to be a problem at trial, and that's because of an issue that hasn't really been fully briefed, either in this report or here. But that's because the ultimate question on sincerity is not really going to be whether the individual plaintiffs were actually sincere. The ultimate question on sincerity under decisions like Abercrombie and McKinnon is United's state of mind with respect to sincerity. Remember the Abercrombie case? That was the ultimate conclusion there was that because Abercrombie- It didn't even know whether the woman that it refused to hire was going to assert a request for a religious exemption, but the court's holding was that Abercrombie's state of mind, that is, believing that she had a sincere religious belief and that she might assert that as a basis for an accommodation, that was sufficient to impose liability. So I think that's the way the sincerity question is ultimately going to play out later on in this case. But in a minute, there's- But we know they granted a great deal of religious accommodations, so that would tend to suggest there isn't this universal state of mind to discriminate against all. But at a specific individual level, if someone said, my temple is a body, would they be permitted to inquire and test that? Well, again, that's something that can be asked on a categorical basis to the fact finder, and then we would, again, assuming that the issue of actual sincerity is what's dispositive, which I don't think it will be because of Abercrombie and that line of cases, but if that were to happen, then there would be a winnowing process based on generic questions asked of the fact finder, and then there would be a relatively small number of people where there would be- So there could be a challenge to class membership on an individualized basis based upon the categorized questioning? Is that what you're suggesting, that this happened later? I think that's the way it would likely play out. But also, and this is important, United itself did, in fact, make a sincerity determination as to each of these people, and that's apparent in two places in the record. On page 6056, an internal document of United said we didn't give anybody a religious exemption until we were satisfied they had established sincerity, and then they told basically the same thing to the EEOC. That's at page 5157. But to be fair, when they're facing a class, for example, you probably remember in August of 23, there was even a motion to compel clergy communications. Right. And that was heeded as to every single individual, and the answer that I saw from your party was not that's not relevant to any of this. It was no, if a clergyman had said you could get a vaccination, that would be relevant to that individual's sincerity. Yes, and again, down the road, after this potential class has been narrowed, there may be a need for some individualized determinations like that. Again, assuming that person-specific sincerity is even relevant. But I guess back to Braidwood, because that's a big impediment for me. Say again, I was confused by the district court's reasoning. What's the simplest way to distinguish Braidwood? Because I'm seeing it as corporations, sincerity is going to be individual, can't certify, and it becomes very difficult for me to accept as to natural persons, that isn't controlled. Well, again, we— What's the simplest reason that case isn't applicable here? Well, I think the distinction between individuals and corporations is a legitimate one. But it goes the other way, doesn't it? You can look at the corporate bylaws. You can ascertain pretty confidently, but with an individual human, any of the three of us, there's nothing out there to this. So I'm looking for a good way to distinguish Braidwood. Well, I think the important distinction, I think, with Braidwood is that they were looking at a class that had been defined with respect to sincerity, and they said that it doesn't work to have a class that's based on people's mental state. Corporate people, corporate people, corporate people. Corporate people. And here we have natural people.  And, again, this court's case law is clear that you can rely on words and actions to establish sincerity. You can infer the relevant mental state from those, and so you don't have to do— except in very rare cases, you don't have to make any case-by-case determination. Consider, you know, how this is actually going to get litigated before a jury. If United tries to challenge a plaintiff's sincerity in front of a jury, that's probably not going to go over very well. And so they're not really very likely to do that. But, again, I would just rest on the court's case law that you can infer sincerity from words and actions, and you can do that in an objective way that doesn't require, in the vast majority of cases, individual determinations. And, of course, we have Halliburton and other decisions that say the mere fact that a defendant might be able to pick off. What about the fact remarks about 180 online religions shortly before? Well, that's a relatively small percentage of the total, but that's something that they can pose to the finder of fact. Does the fact that somebody went online and got informed that way, does that destroy their crime-official case of sincerity? And that can be litigated also, based on common evidence and common facts. I don't want to swallow your time on this, because you have an affirmative appeal, too. I do. One other important distinction with Braidwood is that it was not a Title VII case. It was a RIFRA case. And, of course, the standards are different on all of them, too. And, again, under Title VII, you have the whole Abercrombie line of cases that makes the employer's state of mind with respect to sincerity the thing that's relevant. So let me do just briefly touch on our affirmative appeal. While we don't think there was any abuse of discretion in the part of the case where the district court certified a subclass, we do think that for legal reasons, there was an abuse of discretion with respect to three subclasses that we proposed. First of all, the 23B2 class seeks an injunction against future imposition of a universal policy of indefinite unpaid leave. And in refusing to certify that subclass, the district court ignored the legal relevance of the early history of United's policy. You all may remember reading in the papers and perhaps in the prior decisions that initially United imposed a uniform unpaid leave policy on all of its employees who were seeking an accommodation. About four or five months later, they allowed some of those employees to go back into the workforce. But there was a period where United had a uniform policy of unpaid leave for anybody who sought and was granted a religious exemption. And again, this court concluded that that imposed irreparable injury. And so the point of the B2 class is that we need an injunction to ensure that United won't do something like that again. We gave them an opportunity before the district court to say that they wouldn't. And they declined to assure us that they wouldn't. They declined to assure the district court that they would not resort to that kind of uncoerced policy. So at the beginning, it was singular in terms of the consequence, whereas later it became remote works, OK, job change, maybe mask, vaccine. And the district court focused in on that. And so the legal error was just in ignoring that early period of history because he recognized that later on they had allowed some people to go to work. With respect to the 23B3 masking and testing subclass, there was a legal error there in declining to certify the class of employees who were subjected to a draconian and very coercive masking and testing regime that the discovery shows was designed to make life visible. But early on at the PI stage, you were favoring that. No, not a regime where you have to wear N95 masks and you have to wear them even while you're eating and take them off only when you take bites of food and where you're shunted off into some private area and you have no interaction with other employees. That was not what we were pressing for. We were pressing for an alternative accommodation where employees could get a test at home so that they could demonstrate to United that they, in fact, were not infected and they could wear a normal mask like everybody was wearing during the time. A cloth mask is something that was relatively comfortable. The N95 masks that United required are very uncomfortable, the evidence shows, to breathe in for any significant amount of time. They're used like on construction jobs where you need to put a mask on for five minutes to ensure that you don't inhale a lot of dust. That's what they were trying to get. So wearing an N95 is more than de minimis harm? That's the position? I'm just asking. Yes. As opposed to a cloth mask. And the case law, including the Supreme Court's recent Mulvow decision, says that all that's required is some harm. And that's clearly some harm to be subjected to a masking regime where the mask you're required to wear is miserable to wear for any significant amount of time. And then the other one is the ADA class that I've mentioned a couple of times. And one of the big problems there is that a number of employees sought both religious and disability exemptions. And in those circumstances, United treated them as having only sought a disability exemption. So those people are not even included in the class that the court certified. And I'd like to reserve the rest of my time. Counsel, let me ask you before you leave the podium. What about your opponent referenced emotional distress damages? A couple of times he referenced differences in damages as being an impediment. How would you propose to go about proving up emotional distress damages on a class basis? Excuse me. Well, I would be surprised if that actually arises because of the $300,000 cap on non-economic damages in Title VII. We believe there's likely to be a significant punitive damage award that would exhaust, more than exhaust that $300,000 cap. And if that happens, then there wouldn't even be a need to assess things like emotional harm. Any other questions? No, thank you. You've reserved time with a little extra. This rebuttal argument. Thank you, Your Honors. I'd like to make two brief points about our appeal and then spend a minute addressing the cross appeal. First, on our appeal, a common issue is one where the answer is yes or no for everybody. Not yes for some and no for others. Frankly, just looking at sincerity, it's impossible to understand how you can answer yes for everybody or no for everybody, as opposed to yes for some and no for others. But that leads me to my second point. The only individualized issue, as I've emphasized, isn't just the sincerity issue. There's the reasonableness of the accommodation. And there are also the damages issues that Judge Engelhardt and we were just asking about. My friend talked about the $300,000 cap, about how mental anguish and emotional distress wouldn't come into play. I actually think that's wrong. My understanding is you get back pay. And in addition to that, you get compensatory and punitive damages of up to $300,000 per person. And that's where you come up with things like mental anguish, emotional distress, and financial harm apart from back pay. That's precisely why an analyst in this court held that you can't certify a Title VII v. 3 damages class and why no court in this circuit has ever since certified a v. 3 damages class under Title VII. Now, turning to their cross-appeal— Before you do, would you address Abercrombie? Abercrombie in terms of Title VII, his remarks about— Oh, sure, sure. I think Braywood makes clear that the whole point of class certification in RIPRA turns on the fact that religious sincerity is an element of the claim. It's likewise an element of the claim under Title VII. So whether they bear the burden on the element, but regardless of whether they start out with it and it shifts over to us, it's still an individualized question. It comes right back to Walmart. Even if you thought it was an offense, even if it was our total burden to establish that they weren't sincere and that that was a Title VII offense, Walmart specifically holds that you cannot certify a class on the assumption that the defendant will not be entitled to raise its individual defenses to statutory claims. Now, I'm not sure I quoted it perfectly, but I think I got it pretty close in what I just said. So I think that's a complete response to that. Turning to the clause appeal, I'd like to start out with the B-2 injunction. As far as I can tell, the sole function of the B-2 injunction class is to seek punitive damages. After all, I'm not even sure what they're trying to enjoy. Are they saying that we cannot adopt a similar policy if we get the exact same COVID pandemic that we previously had? Well, with all respect, that's scientifically impossible. Are they saying that we cannot adopt a similar policy no matter what future pandemic we may have? With all due respect, that's kind of crazy. What if we got the next Black Plague where the only alternative was to shut the entire enterprise down? It cannot be the case that they're saying that even in that context, we couldn't adopt a similar policy, which is all really a long-winded way of saying that I think the only purpose that B-2 is serving is as a Trojan horse in order to get punitive damages. But Allison makes crystal clear that you do not get punitive damages as part of a B-2 injunction class. And that's because both Allison and Walmart make clear that you don't get any monetary relief unless it is incidental to the underlying liability finding. In order to be incidental to the underlying liability finding, the monetary relief has to be a direct or automatic result of the liability finding. You're never automatically entitled to punitive damages. And in addition, as the court held in Allison, punitive damages are always an individualized issue because it turns on compensatory damages, which themselves are individualized issues. So frankly, I don't think there's much to the B-2 class claim once you get rid of the punitive damages issue. Turning to masking and testing, I think it has all of the same problems as the main class that the district court certified with respect to religious sincerity, reasonable accommodation, undue hardship. But I'd especially point out damages in that context. How on earth do you determine the damages from masking and testing on a class-wide basis? Somebody who has a health concern wearing masks doesn't have the same damages as somebody having to eat alone because of their mask. He doesn't have the same damages as somebody who actually wanted to wear the mask or didn't have any objection to wearing the mask. There is simply no way you can possibly determine damages on a class-wide basis. Can I drag you back to your sincerity?  About whether it's inherently individualized. And there are a lot of discrimination class actions that require individualized determinations. Is somebody qualified? Is somebody otherwise eligible for a position? But we still find commonality. That doesn't defeat certification. Why can't sincerity be tested in the same way as some of these other individualized defenses? I think it potentially can depending on the case. I think sincerity is always going to be an individualized issue. But you do sometimes certify classes. But why would that defeat certification at the outset as opposed to handled at the remedial stage or some other stage? Sure. And a couple of responses. It defeats it at the outset, I would say, under Rule 23b-3, predominance, because that is also a threshold determination that you have to make. Even if there are other common issues, at Rule 23b-3, predominance and superiority, you have to weigh the common issues against the individualized issues. And here, sincerity would weigh as an individualized issue. The fundamental problem that this report made is that he assumed not just that sincerity was a common issue. He assumed that the reasonableness of the accommodation was a common issue, that undue hardship was a common issue, and that damages were a common issue. None of them are. And I would submit that when you put all four of those issues into the mix, there is simply no way that you can satisfy Rule 23b-3, predominance. And that comes to the sort of fail-safe class issue where they're trying to define the classes only including people who have sincere religious beliefs. I think I'd make two points in response to that. First is I can't let you go over it. There's no way for me to give them equal time. But you've made excellent argument, both of you. The case is submitted. Thank you. Thank you. Or do you have rebuttal time still?  That's correct. Well, I'll just observe briefly that United still has not cleared Angle's no reasonable person abuse of discretion bar with respect to the class that the district court did certify. And so let me make a couple of remarks about our affirmative appeal. First of all, with respect to the B2 class, we are, in fact, seeking an injunction to prohibit United from adopting in the future a policy with respect to masking and testing and unpaid leave that is designed to coerce people to abandon their religious beliefs and their sincerely health concerns. And that is a legitimate request for an injunction. With respect to the B3 masking and testing class, United says that that would create individual issues of damages. Well, there could be punitive damages that could be determined on a class basis. But more importantly, decisions like Deepwater Horizon and Tyson are very clear that variation in damages among class members does not defeat predominance. So that's not a reason not to certify that class. So just in conclusion, the end result of accepting United's arguments here would be to relieve United and all other large companies and small companies of accountability when they violate Title VII by coercing their employees to violate their parish beliefs. And the class action mechanism is essential to ensuring accountability for that kind of misbehavior. Thank you. Thank you, counsel. Thank you both. That case is submitted. We have one more case for the day.